IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TEAMSTERS-OHIO CONTRACTORS
ASSOCIATION HEALTH & WELFARE FUND,

                       Plaintiff,                 Case No. 3:10 CV 703

     -vs-

                                                     MEMORANDUM   OPINION

TAURO BROTHERS TRUCKING CO., et al.,

                       Defendant.

KATZ, J.

     Plaintiff Teamsters-Ohio Contractors Association Health & Welfare Fund brought this action against defendants Tauro Brothers Trucking Co., its principals Ronald J. Tauro and Frank D. DeJute, and former Teamster's business manager Raymond DePasquale alleging violations of the Employment Retirement Income Security Act of 1974 (ERISA) stemming from how Tauro Brothers calculated its contribution to the Fund. Before the Court now are three competing summary judgment motions: the Fund's partial summary judgment motion for judgment against Tauro Brothers and Mr. Tauro on its first, second, third, and fifth claims (Doc. 112); Tauro Brothers', Mr. Tauro's, and Mr. DeJute's joint summary judgment motion for judgment on all claims against them (Doc. 111); and Mr. DePasquale's summary judgment motion for judgment on all claims against him (Doc. 109).

     For the reasons stated herein, the Court denies the Fund's motion in full; grants Tauro Brothers', Mr. Tauro's and Mr. DeJute's motion in part and denies it in part; and grants Mr. DePasquale's motion in full.

I. JURISDICTION

The Fund brought this action under Section 301 of the Labor Relations Management Act (codified as 29 U.S.C. § 185) and Sections 502 and 515 of ERISA (codified as 29 U.S.C. §§ 1132 and 1145). The Court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132. The Court has supplemental jurisdiction over the state law (fraud) claims under 28 U.S.C. § 1367 because, as alleged, they are so related to the federal question claim that they form part of the same case and controversy.

II. BACKGROUND

Tauro Brothers, which is a trucking and transportation business, entered into a Collective Bargaining Agreement (CBA) with the Teamsters Union Local #377 in 2003. (2003 CBA, Doc. 111-1; *see also* 2006 CBA, Doc. 111-2 (three-year renewal).) Tauro Brothers employed truck drivers and the Union represented the drivers. The CBAs called for Tauro Brothers to pay drivers' wages according to "gross truck earnings," which are, for practical purposes, based on the weight of the truck and distance it travels. (Doc. 111-1 at 7.) The same CBAs also obligated Tauro Brothers to pay a fixed amount ($3.57 in the first CBA, rising to $5.07 in the second CBA) per hour for every hour each employee worked into the Fund as a fringe benefit contribution. (*Id.* at 13-14.)

Shortly after entering into the first CBA, Tauro Brothers claims it discovered the inherent conflict in the CBAs' provisions – that is, that it was obligated to pay its employees based on the loads they carried but obligated to contribute to the Fund based on the hours the employees worked. Tauro Brothers says that because gross truck earnings determined its payroll (per the CBAs), it did not track the hours its drivers spent. (Tauro Dep., Doc. 107 at 37.) This led to a meeting between Mr. Tauro, Mr. DeJute, and Mr. DePasquale, who was then the Teamster's business manager and a fund trustee, at which Mr. Tauro inquired how he could comply with the two conflicting portions of the

2

agreement. (*Id.* at 38.) Mr. Tauro remembers Mr. DePasquale telling him to use his best efforts to report hours. (*Id.*) On that basis, Mr. Tauro created a formula, which he dubbed, "a mixture of art and science," to calculate hours based on days worked, distances traveled, and other factors. (*Id.* at 51-52.) Based on these calculations, over the course of the two CBAs (six years), Tauro Brothers paid over $1.2 million in health and welfare benefits to the Fund. (English Report, Doc. 54-1 at 4.)

In 2009, during a contract renegotiation, the Teamsters became concerned that the benefit claims filed by Tauro Brothers' drivers exceeded the premiums received and hired an auditor to find the discrepancy. (English Dep., Doc. 105 at 110.) The auditor, Daniel English, uncovered that Tauro Brothers had been estimating hours for the prior six years, so he created his own method of estimating the hours and concluded that Tauro Brothers had underpaid by $578,427.95. (English Report, Doc. 54-1 at 1-2.) Mr. English imputed an hourly driver rate of $15.20 because he knew that monthly union dues were $38 and felt that a factor of 2.5 times the hourly rate was the standard. (*Id.* at 1.) He then divided the total payroll over the six years by the imputed hourly rate and opined on what the contribution should have been. (*Id.* at 2.)

Tauro Brothers retained an expert, Jeffrey Mordaunt, who called into question Mr. English's $15.20 hourly rate and the resulting calculation. (Mordaunt Report, Doc. 80-1 at 7-12.) Mr. Mordaunt contends that a more accurate and supportable method of estimating hours is to use statistical wage rates from the region and to adjust those for inflation. (*Id.* at 12-14.) Using this calculation, Mr. Mordaunt disputes Mr. English's ultimate $578,427.95 calculation and asserts the shortfall is either $66,016 or $100,978. (*Id.* at 15.)

The Fund brought five claims against the defendants: unpaid fringe benefits against Tauro Brothers, Mr. Tauro and Mr. DeJute; breach of fiduciary duty against Mr. Tauro and Mr. DeJute;

3

fraudulent reporting against Mr. Tauro, Mr. DeJute, and Mr. DePasquale; breach of fiduciary duty against Mr. DePasquale; and a claim for attorneys' fees against Tauro Brothers.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of, "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party can avoid judgment only by setting forth facts that show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(a) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The Court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV. ANALYSIS

The Fund brought five claims against the four defendants. The Fund now asks for judgment in its favor on four of those claims and the defendants, by two separate motions, ask for judgment in their favor on all five claims.

### A. UNPAID FRINGE BENEFITS

In its first claim, the Fund alleges Tauro Brothers, Mr. Tauro, and Mr. DeJute violated ERISA and breached the terms of the CBAs by estimating their employees' hours and underpaying the fringe benefit contributions. Both sides have moved for summary judgment on this issue. Tauro Brothers acknowledges that it did not keep records of its employees' hours and instead used a formula to estimate the hours and make benefit payments. It says, however, that it having reported and paid on these calculated and estimated hours, the Fund cannot show evidence indicating that any hours were actually underreported. The Fund, on the other hand, has generated its own estimate and

5

asks the Court to shift the burden to Tauro Brothers to disprove the Fund's estimated contribution shortfall.

Notwithstanding Tauro Brothers' $1.2 million in fringe benefit contributions during the period in question, the Fund has introduced some evidence that Tauro Brothers underpaid the benefits. (English Report, Doc 54-1 at 1 ("Based upon the work that I performed it is my strong opinion that Tauro Brothers Trucking Company has clearly under-remitted health and welfare contributions for the period stated above."); English Dep., Doc. 105 at 47 (stating his opinion was that Tauro Brothers underpaid $578,000); Mordaunt Report, Doc. 80-1 at 15 (estimating an underpayment, if any, of either $66,016 or $100,978).)

Furthermore, the Fund can show that Tauro Brothers did not maintain records of employee hours worked. "[E]very employer shall, in accordance with such regulations as the Secretary may prescribe, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). Tauro Brothers properly maintained sufficiently detailed payroll records to determine each employee's pay, but, because it paid its drivers by the load and trip, it had no record of the hours each employee actually worked, which was the basis on which the benefit premiums due to the Fund were to be calculated. This statutory record-keeping violation shifts the burden to Tauro Brothers. *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir. 1994) ("[A]n employer's failure to maintain records under ERISA shifts the burden to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the plaintiff's evidence in order to avoid a finding that the employer violated its statutory record-keeping duty." (quotation omitted)). Tauro Brothers cannot

6

avoid this burden shifting; its payroll records do reflect the basis for calculating employee pay but do not reflect the basis for calculating benefits due.

Even though the Fund has shown evidence of some underpayment and has shown the burden shifts to Tauro Brothers, the Fund is not entitled to summary judgment on its damages claim. In ERISA burden-shifting cases, courts have tended to award summary judgment to a fund based on the fund's calculations if the employer cannot show what the actual contributions should have been. *E.g.*, *Grimaldi*, 30 F.3d at 697 ("[A]n employer should not be allowed to benefit from the violation of a statutory duty." (citation omitted)); *Trustees of Painters Union Deposit Fund v. Ybarra Const. Co.*, 113 F. App'x 664, 668 (6th Cir. 2004) (considering the union's audit accurate because Ybarra had presented no contrary evidence); *Trustees of Detroit Carpenters Health & Welfare Fund v. River City Constr. Co., Inc.* 99 F. App'x 612, 614 (6th Cir. 2004) (upholding the award of the auditor's finding because the defendant "ultimately failed to present evidence demonstrating a genuine issue of material fact concerning its obligation to pay the fringe benefits." *Id.*). Nevertheless, these cases allow that an employer can also defeat judgment by showing flaws in the fund's calculations, which Tauro Brothers has done.

To calculate the underpayment on behalf of the Fund, Mr. English first derived an hourly rate for the drivers by assuming that the drivers' monthly union dues were 2.5 times their hourly rate (that is, he knew the monthly dues were $38 for the entire six years of the CBAs, so he assumed their hourly wages must be $15.20 per hour for that same period). (English Report, Doc. 54-1 at 1.) He divided Tauro Brothers' total, six year payroll amount by the imputed hourly rate to estimate hours worked over the period. Finally, he multiplied the hours worked by the per-hour contribution rate for each year and compared that to the actual fringe benefit contributions paid. (*Id.*) The report dismisses Tauro Brother's estimate: "Since the drivers are paid on a per load basis, the prevailing

wage which the Company reflected for each year was deemed to be irrelevant." (*Id.*) He does not comment further, though, or provide any support for why, in his expert opinion, he deemed prevailing wages "irrelevant" but then used an imputed hourly wage himself to make his own calculations.

Through its expert, Mr. Mordaunt, Tauro Brothers has called into question the reliability of Mr. English's estimate. The two experts agree on the general methodology of dividing the total payroll by an imputed hourly rate to estimate the total hours worked; they diverge on the selection of that hourly rate. The English report provides little support for its rate selection (only that 2.5 times the hourly rate is the "standard union rate for which dues are calculated"). (Doc. 54-1 at 1.) It dismisses the use of a prevailing wage rate as "irrelevant," "[s]ince the drivers are paid on a per load basis." (*Id.*) Nevertheless, the English report does not address the logical strain between deeming one imputed wage rate irrelevant because the employer did not pay hourly and another imputed wage rate acceptable. In a comprehensive and well-reasoned report, Mr. Mordaunt criticizes the selection of $15.20 and points out that even if the wages were $15.20 in 2003, they should be adjusted for wage inflation. (Mordaunt Report, Doc. 80-1 at 10-14.) He further proposes that the Tauro Brothers' drivers must have been earning wages that compared favorably to the hourly wages offered by its competitors in the region, so using a regional statistical wage is appropriate in this analysis. (*Id.* at 12-13.)

The Court need not further find fault with the English report or try to actually determine which method of calculation is most accurate. Even though the Fund successfully shifted the burden to Tauro Brothers because of the lacking recordkeeping, Tauro Brothers has come forward with sufficient evidence to negative the inference from Mr. English's report. *See Grimaldi*, 30 F.3d at 696 (shifting the burden to the plaintiff to show evidence of either the actual hours worked or that the

8

plaintiff's report is not reasonable); *see also PACE Indus. Union-Mgmt. Pension Fund v. Dannex Mfg. Co., Inc.*, 394 F. App'x 188, 197 (6th Cir. 2010) (listing examples of ways to rebut an audit: "by producing the records that are purportedly in [the CEO's] basement, providing expert testimony criticizing the audit's methodology, or offering an alternative calculation.").

In sum, Tauro Brothers' expert report rebuts the Fund's report enough to save Tauro Brothers from summary judgment on the entire balance suggested by Mr. English, but does not foreclose that it may owe some unpaid benefits and even that Mr. English's report may be the proper calculation of damages. Thus, the Court denies both the Fund's summary judgment motion and Tauro Brothers' summary judgment motion on the question of unpaid fringe benefits and preserves it for trial.

### B. BREACH OF FIDUCIARY DUTY AGAINST MR. TAURO AND MR. DEJUTE

In its second claim, the Fund says Mr. Tauro and Mr. DeJute are personally liable for any unpaid fringe benefit contributions because they were fund fiduciaries and breached that fiduciary duty by underreporting and underpaying contributions. (Am. Compl., Doc. 1 at ¶¶ 20-30). The Fund moves for judgment in its favor on this claim against Mr. Tauro (Doc. 112), but subsequently determined and conceded that Mr. DeJute was not a fiduciary (Opposition, Doc. 126 at 23). Mr. Tauro and Mr. DeJute deny they were fiduciaries and move for summary judgment on this claim.

Any person or entity that exercises certain types of discretionary control over an ERISA fund's assets owes a fiduciary duty to the beneficiaries of that fund. *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006); 29 U.S.C. § 1002(21)(A). On the other hand, those that handle fund assets in a purely ministerial manner, such as receiving deposits for a fund, are not fiduciaries. *Briscoe*, 444 F.3d at 494. A fund's fiduciary is personally liable to the fund for any losses caused by his breach of his fiduciary duties. 29 U.S.C. § 1109. To proceed, the Fund would need to show some evidence that

the unpaid contributions were plan assets, that Mr. Tauro was a fund fiduciary, and that he breached his fiduciary duty.

The Fund modified its plan trust documents in 2001 to expand the definition of fund assets: "[C]ontributions or other monies received from or owing from an Employer required to make contributions to this Fund shall be deemed Trust Fund assets." (Doc. 112-4.) It incorporated those modifications in the two CBAs by reference. (Doc. 38-1 at 14). Nevertheless, the Court need not conclude whether any amounts Tauro Brothers underpaid were fund assets because the Fund has not met its burden of showing that Mr. Tauro was a fiduciary.

Mr. Tauro, as a principal of Tauro Brothers and head of its accounting operations, was ultimately responsible for how the company executed its accounting-related duties under the CBAs. (Tauro Dep., Doc. 107 at 10-12, 90 (detailing Mr. Tauro's background and role in the company as head of accounting).) Courts are split over whether an employer corporation's owner or controller becomes a fund fiduciary just by virtue of his obligation to exercise control over the fund's deposits (that is, by withholding money from employee paychecks to be submitted to a fund or by agreeing to report and pay benefits to a fund). The Fund cites cases from a variety of courts around the country imposing fiduciary duties on individuals, but the most on-point case is one from the Sixth Circuit Court of Appeals that holds the opposite. In *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, the Court of Appeals declined to create fiduciary relationships where the would-be fiduciary breach was a restatement of a breach of their contractual obligation to make payments to the fund. 482 F. App'x 67, 69 (6th Cir. 2012). The Court cited the Ninth Circuit's in-depth analysis and conclusion that ERISA's language, trust law, regulatory interpretation, and existing (but divided) case law dictate that, "an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund." *In re Luna*, 406 F.3d 1192, 1203 (10th Cir. 2005). Mr. Tauro employed a

mathematical formula to estimate hours and the Fund accuses him of underestimating those hours. This Court has left open the question of the extent to which Tauro Brothers underpaid its fringe benefits because it presents questions of proof of whether Tauro Brothers' system of estimation accurately reflected the actual hours worked. The answer to this question sounds in contract law and it extends ERISA fiduciary law too far to create a fiduciary breach even if Mr. Tauro's calculation was flawed and caused an underpayment. *AirTab*, 482 F.App'x at 69-70 ("This is a situation in which the plaintiff is attempting to transform an employer's nonpayment of a contribution into an exercise of control over a disposition of a plan's asset. We cannot find the [employer's owner and coordinator] to be fiduciaries under such an argument.").

The analysis for Mr. DeJute's status as a fiduciary would be the same, but the Fund conceded that, "[u]pon review of discovery conducted in this case, the Plan agrees that Mr. DeJute is not a fiduciary . . ." (Doc. 126 at 23.) Therefore as to this point, the Court denies the Fund's summary judgment motion, grants Mr. Tauro's and Mr. DeJute's summary judgment motion, and dismisses the breach of fiduciary duty claim against both Mr. Tauro and Mr. DeJute. Because this claim was the only theory for holding Mr. Tauro and Mr. DeJute personally liable for any of Tauro Trucking's unpaid fringe benefits (which are to be determined at trial), the Court also grants summary judgment to just Mr. Tauro and Mr. DeJute on the first claim (unpaid fringe benefits).

## C. FRAUD

In its third claim, the Fund posits that Mr. Tauro and Mr. DeJute committed fraud (which they deem "fraudulent reporting," "false reporting," and "fraudulent actions") by signing and certifying the accuracy of the contribution reports that contained estimated employee hours. (Am. Compl., Doc. 38 at ¶¶ 31-45). As a further part of the same claim, the Fund says its former business agent and fund trustee, Mr. DePasquale, was aware of the false nature of the reports and committed

11

fraud by enabling Tauro Brothers to continue submitting false reports. (*Id.*) The Fund cannot maintain this count against any of the defendants for two reasons. First, ERISA preempts "virtually all state law claims relating to an employee benefit plan." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991); *see also* 29 U.S.C. § 1144 (ERISA supersedes, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" to which ERISA applies). That is, where the plaintiff's claim is not a separate legal duty independent of ERISA, but is instead just a restatement of the ERISA violation in terms of common law fraud, ERISA preempts the claim. *Briscoe v. Fine*, 444 F.3d 478, 499 (6th Cir. 2006) (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 214 (2004)). ERISA's requirement to make accurate reports to the plan administrator completely subsumes – and therefore preempts – the violation the Fund alleges here: committing fraud by certifying the benefit reports were accurate. *See* 29 U.S.C. § 1059(a)(1).

Second, even if ERISA did not preempt common law fraud, the Fund has not shown evidence that the reports were actually inaccurate, so it cannot show fraud. In a prior section, the Court found that Tauro Brothers' insufficient record of the hours worked shifted the burden to it to show its records were accurate. No such burden shifting applies to a fraud claim, and, to maintain such a claim, the Fund would have to show, among other things, some evidence that the hours reported were actually inaccurate. *See* Restatement (Second) of Contracts §§ 159, 162. The Fund relies on Mr. English's expert report, which uses mathematical formulas to estimate what the fund contributions should have been. Even ignoring the report's flaws, discussed *supra*, it is not evidence of any specific instance where the actual hours worked exceeded the estimated hours reported so it is not evidence of fraudulent reporting. (English Dep., Doc. 105 at 42 ("Q. And did you ever attempt to determine whether the approach taken by Mr. Tauro to determine hours during that period was

12

reasonable or not? A. No, sir."). The Fund cannot proceed on the fraud claim and Mr. Tauro and Mr. DeJute are entitled to judgment on this count.

Mr. DePasquale primarily raises a statute of limitations defense asserting that if he initially gave Tauro Brothers guidance on how to file its reports, that act is outside the statutory period and the Fund has introduced no evidence of more recent, ongoing conduct. (*See generally* DePasquale Motion, Doc. 109-1.) The Court explores the analysis of the statute of limitations defense more thoroughly *infra*, but because the Court finds the Fund cannot maintain a claim for fraud against Mr. Tauro and Mr. DeJute, the Court must dismiss the derivative claim against Mr. DePasquale predicated on his alleged ongoing knowledge of and acquiescence to the fraud.

### D. BREACH OF FIDUCIARY DUTY AGAINST MR. DEPASQUALE

In its fourth claim, the Fund alleges its own former business agent (and former named fund trustee), Mr. DePasquale, breached his fiduciary duties to the Fund when, without the knowledge or consent of the Fund, he improperly counseled Tauro Brothers on how to file reports of hours and kept secret from the Fund the fact that the reports may be inaccurate. (Am. Compl., Doc. 38 at ¶¶ 46-62.) Mr. DePasquale moves for summary judgment, saying that, while he denies the original conversation, it is nonetheless beyond the statute of limitations. Mr. DePasquale also says that the Fund can point to no evidence of an ongoing or continuing violation that would expand the relevant statute of limitations window of time.

Mr. DePasquale was a named fund trustee and was therefore a fiduciary of the Fund. An ERISA fund fiduciary's "duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Krohn v. Huron Mem'l Hosp.*, 173

13

F.3d 542, 548 (6th Cir. 1999) (quotation omitted). Fiduciaries are personally liable for damages caused by their breaches, 29 U.S.C. § 1109, but ERISA limits the time for bringing such an action:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

One conversation is at the heart of the breach of fiduciary duty claim, but two distinct memories of the conversation require two analyses. The Fund can show that both Mr. Tauro and Mr. DeJute remember conversing with Mr. DePasquale at the beginning of the first CBA (mid 2003) on the subject of how to report drivers' hours and pay the health and welfare premium. (Tauro Dep., Doc. 107 at 39-41; DeJute Dep., Doc. 106 at 73-79.) Mr. Tauro says he raised the question with Mr. DePasquale because Tauro Brothers did not keep track of drivers' hours for its own payroll purposes (that is, it paid drivers by the load and distance, per the CBAs). Mr. Tauro remembers Mr. DePasquale saying he should use his best efforts to arrive at a number and Mr. DeJute, who came into the conversation later, remembers Mr. DePasquale's stress being on reporting up to 40 hours per employee per week for each employee. (Doc. 107 at 39; Doc. 106 at 78.)

Whatever the actual content of the 2003 conversation, nearly eight years passed before the Fund brought this action alleging Mr. DePasquale breached his fiduciary duty in what he told Tauro Brothers or in not promptly informing the Fund of the conversation. An action sounding just in the initial conversation or alleging that Mr. DePasquale breached his fiduciary duty by not informing the

14

Fund of the conversation shortly thereafter is time barred. However, the Fund says that Mr. DePasquale's continuing omission (that is, not telling the Fund of his conversation or its detrimental effect on the Fund's premium collections) and concealment (receiving and approving reports he knew were estimated) through his tenure in 2007 constitute acts and omissions from which the time to file should be ascertained. *See* § 1113.

Drawing inferences in favor of the Fund, *Dixon* 702 F.3d at 273, the Court can separately assume that each of the two versions of the conversation could be correct in determining whether the Fund has some evidence on which to proceed. First, assuming Mr. Tauro's recitation is correct, the Fund cannot show a breach of fiduciary duty. The CBAs required Tauro Brothers to pay its drivers by the load rather than the hour, so the Fund knew that Tauro Brothers payroll records themselves would not reflect hours. Mr. Tauro asked Mr. DePasquale how to report hours in light of the fact that hours were not part of their payroll data. Mr. Tauro remembers Mr. DePasquale telling him to use his "best efforts" to report hours. (Tauro Dep., Doc. 107 at 39.) The "best effort" answer was precisely what Tauro Brothers needed to do; it needed to use its best efforts to figure out how many hours each employee worked. Even if the Fund can show that Mr. Tauro misconstrued this answer when he took it to mean he could create an inaccurate method of estimating the hours, the answer is innocuous enough that it is not evidence of a fiduciary breach. That is, telling an employer who was not recording hours in its payroll process that it needed to exert its best effort to determine the hours worked is not an action that Mr. DePasquale would have had to disclose to the Fund, so this scenario creates no ongoing duty to disclose or omission for not disclosing. Nor does it lead to any assumption that Tauro Brothers' reports were inaccurate if they followed the best efforts advice, so Mr. DePasquale had no duty to disclose a concern regarding the reports' accuracy.

15

Second, assuming Mr. DeJute's recitation of the meeting is correct and Mr. DePasquale told Tauro Brothers to use 40 hours as a maximum for each employee each week, the Fund may be able to show a breach of fiduciary duty because Mr. DePasquale would have been telling Tauro Brothers to report inaccurate hours (assuming that employees do not, in fact, always work 40-hour weeks). However, a passing review of around 72 monthly payroll reports from 2003 to 2009 indicates that Tauro Brothers claimed 40-hour employee weeks for only around half or fewer of the weeks. (Doc. 134-1 at 1-221) When 40 hours were not reported, employees worked fewer or more than 40 hours.[1] (*Id.*) This indicates that even if Mr. DePasquale gave an improper instruction, Tauro Brothers did not follow it.

A fiduciary must disclose "material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person." *Krohn*, 173 F.3d at 548 (quoting Restatement (Second) of Trusts § 173). The Fund has not shown that bad advice given in 2003 but not followed creates an ongoing material fact. Even if Mr. DePasquale gave bad advice to Tauro Brothers (that is, advice to use 40 hours every week rather than gathering the correct number), and even if he breached a fiduciary duty in 2003 by not disclosing to the Fund that he gave an employer bad advice on how to file its reports, the Fund has not shown the ongoing materiality of bad advice given but not followed. Likewise, Mr. DePasquale had no duty to tell the Fund that the monthly reports, which clearly were not completed based on the 40-hour advice, were false.

---

[1] Beginning around October 2004, the reporting switched from weekly hours to monthly hours so the hours worked per week are not readily apparent. Even though the Court's passing analysis does not break down how many working days are in each reported month, the variation of hours on each monthly report makes it apparent that Tauro Brothers was not claiming 40 hours each week for each employee.

16

Whether the Court credits the Fund's evidence of Mr. Tauro's memory of the 2003 conversation or Mr. DeJute's memory, the Fund cannot show evidence of Mr. DePasquale's breach of fiduciary duty, by act or omission, that was ongoing and inside the statutory period, thus, he is entitled to summary judgment on this claim.

### E. LIQUIDATED DAMAGES, ATTORNEYS' FEES, INTEREST, AND COSTS

The Fund asks the Court to award contractual liquidated damages, interest, its attorneys' fees, and the cost of Mr. English's audit. Because the Fund has not prevailed by showing Tauro Brothers failed to pay required contributions, a decision on these questions is premature and the Court reserves these issues for trial.

### V. CONCLUSION

The Court denies the Fund's summary judgment motion in full. (Doc. 112.) Just as to Mr. Tauro and Mr. DeJute, the Court grants their summary judgment motion in full. (Doc. 111.) Just as to Tauro Brothers, the Court grants its summary judgment motion as to the second claim (breach of fiduciary duty) and the third claim (fraudulent reporting) and denies it as to the first claim (unpaid fringe benefits) and the fifth claim (attorneys' fees). (*Id.*) The Court grants Mr. DePasquale's summary judgment motion in full. (Doc. 109.)

The question of unpaid fringe benefits (the first claim) and the question of liquidated damages, attorneys' fees (which the fifth claim contains), interest, and costs remain for trial only against defendant Tauro Brothers.

IT IS SO ORDERED.

                                                  s/ *David A. Katz*
                                                  DAVID A. KATZ
                                                  U. S. DISTRICT JUDGE